FRANK FISHMAN, Appellant, v. LAS VEGAS SUN, Inc., a Nevada Corporation, Respondent.

No. 4162

January 8, 1959                                      333 P.2d 988

*Jones, Wiener & Jones,* of Las Vegas, for Appellant.

*Morton Galane,* of Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant has moved this court for an order granting leave to supplement the record on appeal by including

therein the reporter's transcript of testimony taken at the trial. The motion is based on Rule 75(h) NRCP and is supported by affidavit showing that upon the service and filing of notice of appeal, together with undertaking, appellant filed a designation of the record on appeal specifying, among other things, the reporter's transcript of the testimony, which was however omitted by the clerk, which omission was not discovered by appellant until October 30, 1958.

Under the circumstances we feel that the record should be supplemented by adding the transcript. Accordingly the appellant's motion for leave to supplement the record by including the reporter's transcript of testimony is granted.

Respondent has moved this court under Rule 37(d) NRCP for an order striking the appellant's pleadings and dismissing the appeal "for appellant's willful failure to file answers to written interrogatories." In support of this, respondent notes, first, that appellant posted no supersedeas bond at any time after the judgment, and that thereupon respondent invoked the provisions of Rule 69(a) on proceedings supplementary to and in aid of the judgment by requiring answers to interrogatories concerning the property of the appellant judgment debtor, and that appellant not only failed to answer the interrogatories but failed to answer or respond to a subsequent letter again requesting such answers.

Despite the fact that the appeal to this court has removed from the district court's jurisdiction the determination of any matters involved in the appeal, it is nonetheless clear that the appeal to this court, without supersedeas, cannot of itself deprive the respondent judgment creditor of the right to execute upon its judgment or of its right to invoke the aid, in the district court, of the provisions of Rule 69 with reference to execution and proceedings supplementary to and in aid of the judgment and under the provisions of Rule 37(a) and (b) with reference to discovery. For such purposes the district

court, under the circumstances recited, retains jurisdiction to make such orders as may be necessary and proper under the rules. In our view such remedies are adequate to meet the present conditions.

It is accordingly ordered that respondent's motion is denied, but without prejudice to the right of respondent to pursue the remedies available to it before the trial court under Rules 69 and 37 (a) and (b) NRCP.

No. 4162

June 18, 1959                                          341 P.2d 102

ON THE MERITS

Action to recover cost of hotel advertising from principal stockholder of hotel corporation. The trial court entered judgment for plaintiff and against one of the defendants, and that defendant appealed. The Supreme Court, McNAMEE, J., held that evidence sustained finding that plaintiff never intended to give credit to hotel corporation but extended credit to stockholder individually and provided the hotel advertising for the stockholder individually, so that there was not such an agreement to answer for the debt of another as would be unenforceable under the statute of frauds.

See also 75 Nev. 13, 333 P.2d 988.

*Jones, Wiener & Jones,* of Las Vegas, for Appellant.

*Morton Galane,* of Las Vegas, for Respondent.

## OPINION

By the Court, McNamee, J.:

This is an appeal from judgment in favor of Las Vegas Sun, Inc., plaintiff below and against Frank Fishman, one of the defendants below for the sum of $13,491.57.

Respondent's claim results from two alleged accounts for advertising, one in favor of Las Vegas Sun, Inc. in the sum of $12,220.07 and the other in favor of Las Vegas Television, Inc. in the sum of $1,271.50 allegedly assigned to the respondent.

There is no dispute with respect to the reasonableness of the claims; appellant's chief contention is that these accounts were debts of Royal Hotel, Inc., that he is not responsible for them, and that if in fact he had agreed to be responsible for them, such an agreement would amount to a promise to answer for the debt or default of another and therefore unenforceable under the statute of frauds. NRS 111.220.

It appears from the evidence that appellant was the owner of all of the stock of the Royal Nevada, Inc., a corporation, until April 1955 when one-third of said stock was transferred to his wife under a property settlement agreement; that Royal Nevada, Inc. was the owner of the property known as the Royal Nevada Hotel, and that the Royal Nevada Hotel was operated by Royal Hotel, Inc., a separate corporation under a lease from Royal Nevada, Inc.

It does not appear what interest, if any, appellant Fishman had in Royal Hotel, Inc.

It is recited in the court's Findings of Fact:

"That on or about the 1st day of April, 1955, plaintiff and defendant, Frank Fishman, agreed that the plaintiff should furnish the defendant, Frank Fishman, certain advertising for which Frank Fishman impliedly agreed to pay the reasonable value thereof. While Frank Fishman personally obligated himself to pay the reasonable value of such advertising, the said advertising was

for the use and benefit of the Royal Nevada, Inc.; that at the said time the defendant, Frank Fishman, was president, director, and owner of one hundred percent of the outstanding stock of Royal Nevada, Inc., and Royal Nevada, Inc., was the alter-ego or second self of the said Frank Fishman; that as a result of the said agreement the said plaintiff furnished the defendant, Frank Fishman, between April 4, 1955, and January 31, 1956, advertising, for which there is a net balance due of the reasonable value of Twelve Thousand Two Hundred Twenty and 07/100 ($12,220.07) Dollars."

The evidence relevant to such findings is conflicting. In support thereof, Herman Milton Greenspun, president of respondent corporation, testified that before any of the indebtedness which forms the basis of the action below arose, he had a conversation with Fishman relative to credit to be extended by respondent to the Royal Nevada Hotel for advertising, at which time appellant stated to him: "Frank Fishman's credit is good and any advertising you give will be to Frank Fishman * * * Frank Fishman is the Royal Nevada and the Royal Nevada is Frank Fishman, so any advertising you give you are giving to me."

Greenspun further testified: "I did ask him about these people who were from St. Louis, I think it was Mr. Mall and Sid Wyman who were going to operate the place and he said 'It does not make any difference who operates, they are clerks * * * Frank Fishman is the Royal Nevada and the Royal Nevada is Frank Fishman, I am the boss over everything there, I am the boss.' "

Later and after the indebtedness amounted to more than $5,000, when Greenspun told Fishman he was concerned about the hotel's position, Fishman replied: "You have no cause for concern * * * You are doing business with Frank Fishman and Frank Fishman will always need advertising, because these people come and go but Frank Fishman will stay * * * I need advertising and the Royal Nevada needs the advertising * * * they may go out tomorrow morning, but I can bring the Desert Inn crowd in here and operate the

gambling, but I own the Royal Nevada * * * the Royal Nevada needs the advertising so don't worry about your money, you are doing business with Frank Fishman and you are one man I will never stick, I don't care what happens to anybody, you are one man I will never stick * * * You are giving the advertising to me personally and no one else."

This latter conversation took place before William Miller, the then general manager of Royal Nevada Hotel. In his deposition, Miller testified that Fishman was the owner of the Royal Nevada Hotel and his version of this conversation is as follows:

"Hank Greenspun was telling us that he could not give us any more advertising because he had not been paid; and Frank Fishman told Hank that he was the owner of the Royal Nevada and that he would see that Hank received the money; if he did run any more ads or advertising and that he would be personally responsible to Hank Greenspun if the Royal Nevada did not pay. Hank said under those conditions he would continue the ads on the Royal Nevada. Fishman also said that as he was the owner of the Royal Nevada, he was responsible for everything and that he was the one who would suffer if the Royal Nevada was not a success. Then I left, in fact, we all left and that was the end of the conversation."

After Miller left, Fishman said to Greenspun: "* * * if it isn't Bill Miller it will be the Desert Inn crowd. * * * I have negotiated with them, but the Royal Nevada will always remain open because Frank Fishman is the Royal Nevada and the rest of these men are just clerks, their names are on the license but they are just clerks. Frank Fishman is the Royal Nevada and like I told you, Hank, I will never stick you."

This evidence even though contradicted by Fishman, whose testimony the trial court was free to reject, sufficiently supports said findings. The fact that billings were made out to Royal Nevada Hotel, rather than to Frank Fishman, is immaterial in view of the testimony that the billings for the several Las Vegas hotels, for purposes of convenience and identification, were made

out in the trade name of the particular hotel to which they applied unless otherwise directed.

Since it is apparent from the evidence that appellant was the person with whom respondent was dealing and never intended to give credit to Royal Hotel, Inc., we are not concerned with any phase of the statute of frauds.

The following authorities support this conclusion:

Forster-Davis Motor Corporation v. Abrams, 175 Okl. 464, 53 P.2d 569; Seder v. Kozlowski, 304 Mass. 367, 23 N.E.2d 880.

The recent case of Swartout v. Grover Collins Drilling Mud Engineers and Materials, 75 Nev. 297, 339 P.2d 768, 769, while not involving the statute of frauds is consistent with our conclusion herein. There we had this to say:

"At the conclusion of the trial the court said from the bench: 'In this case the court finds Mr. Swartout has contended in court the claims are the obligation of the Bonanza Oil Company; that as an officer of the company, and as an employee also, he was authorized to obligate the company for the amounts of these claims * * *.

" 'The evidence shows Swartout held himself out as principal to the plaintiffs and that plaintiffs were dealing with him only and not with the company. He is now estopped because of his conduct in this regard from denying the fact that he was acting as principal and would be personally responsible for the obligations. This court could come to no other reasonable conclusion. Nobody is going to deal with a corporation they know nothing about. The fact he might also be acting as agent for an undisclosed principal, which he in fact was, evidently from his testimony, does not negate his liability. It merely adds undisclosed liability.'

"This brief decision from the bench was carried out in the formal findings, conclusions, and judgment.

"Appellant points to parts of the transcript as evidence of the fact that the respondents were aware of Bonanza Oil Company, appellant's corporation, not only after respondents extended credit but also at times when

the credit was extended. We may assume this to be so. We may even assume further, arguendo, that Bonanza Oil Company was a disclosed principal, that it had authorized appellant to act, and that appellant's agency was known to respondents. Such situation would not diminish the legal effect of appellant's express undertaking to pay or his express assertion of his personal responsibility for payment, as a result of which the credit was extended. His liability is predicated not upon his agency but upon his contract obligation."

With respect to the claim of respondent for $1,211.50 allegedly assigned to it by Las Vegas Television, Inc., it is unnecessary to consider the merits of such claim because, as pointed out by appellant, there is no evidence to justify a finding that said claim was ever assigned to respondent. Judgment based in part thereon was error. The judgment therefore must be modified by eliminating the amount of this claim.

It is ordered that the judgment of the district court be modified by reducing it from the sum of $13,491.57 to the sum of $12,220.07. As so modified, judgment affirmed. No costs are allowed.

MERRILL, C. J., and BADT, J., concur.